**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

|  |  |  |
|---|---|---|
| T.J., O.J., D.J. and J.J., infants, by their next friend Tasha Hudson, | : : : : | Case No. 3:18-cv-00096 |
| Plaintiffs, | : : | |
| vs. | : : | |
| JON FREIVALD and JOHN DOE, | : : | |
| Defendants. | : : | |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**RESPONSE TO DEFENDANT'S STATEMENT OF FACTS[1]**

6.   Several of the occupants of Ms. Hudson's vehicle recall seeing another officer with Officer Freivald. (See Defendant's Statement of Facts [ECF # 32], ¶22 at 9.

12.   Defendant continues to insist that Ms. Hudson violated Va. Code § 42.2-804 by failing to keep to the right while travelling at less than the "normal" rate of speed. The obligation to drive at the right lane is also limited to "when such lane is available for travel." According to Defendant, there was a car travelling abreast of Ms. Hudson's at the same speed. (Exhibit 1,Thacker dep. at 11, 15). How, then, is such lane "available for travel?"

13.   Defendant also insists that Ms. Hudson violated Va. Code § 46.2-841.2 by failing to give way to an overtaking vehicle "as soon as the overtaken vehicle can safely do so." Again,

---

[1]Rather than respond to Plaintiff's Statement of Undisputed Material Facts, Defendant sets forth in sixty numbered paragraphs, his view of the case. Most of the "facts" are irrelevant to a determination of Plaintiff's motion, but Plaintiff responds to each that is not supported by the record.

1

with a vehicle to her immediate right, it was not safe to do so.

14. The time period during which Defendant made his observations was brief: "And for the course of a half to three quarters of a mile we continued in this deadlock;" "[A]nd the situation escalated over the course of about a mile." (Exhibit 1,Thacker dep. at 17)

15. Defendant cannot know why the vehicle he identifies took action.

16. Ms. Hudson has admitted that Defendant flashed his headlights and not his overhead lights, but has testified otherwise.  Other persons in Ms. Hudson's vehicle only saw the overhead police lights. (Exhibit 2, Marquis Johnson dep. at 7; Exhibit 3, Mark Johnson dep. at 6).  Most importantly, Defendant will testify that he activated those lights. (Exhibit 4, Freivald dep. at 15-16).

17. Defendant, using the broad ruberic of "public safety," fails to demonstrate how the conduct that he desctribed constitutes a breach of the peace, "an act likely to produce violence," other than his pure speculation or surmise.  Certainly people, including Officer Freivald, may have been frustrated if what Defendant says is true, but that is a far cry from the likelihood that those drivers would engage in violence.

22. While one of Plaintiffs' witnesses testified that the second officer was present for the duration of the traffic stop, Lt. Thacker testified that he observed the police car stopped with its overhead lights on and  did not know how long it had been there. (Exhibit 1, Thacker dep. at 9, 19). If the second officer was Lt. Thacker, as claimed by Defendant, he could not have been present for the duration of the traffic stop.  In addition, while Lt. Thacker initially said that he did not remember who left first, on cross examination he recalled that Officer Freivald was headed back in the direction of Ms. Hudson's van on foot when he left. (Exhibit 1, Thacker dep. at 20).

26. According to Defendant, it is "clear that the second officer was, in fact, Lt. Thacker, that he was traveling in his own marked patrol cruiser." (Defendant's Statement of Facts, ¶22).  It is therefore impossible that he was at the rear of Ms. Hudson's minivan "throughout the traffic stop."

31. One cellphone was being used to "live stream" what was happening.  Another phone took the footage that was turned over to Defendant. (Exhibit 2, Marquis Johnson dep. at 12-14). Though Mr. Mark Johnson believed that the video covered the duration of the stop, it appears that the live stream covered the duration and that the recorded footage only took 2 minutes 16 seconds of the encounter.
Mr. Johnson also testified that there was a discussion between Ms. Hudson and Defendant Freivald in which Defendant "just kept going on and on . . . And then at that time, my son . . .started recording." (Exhibit 3, Mark Johnson dep. at 11-12).

2

52.     Lt Tacker later testified that Officer Freivald said he was going to give the driver of the minivan a warning.  That's when he got in his car and left, as Freivald was headed back towards the van. (Exhibit 1, Thacker dep. at 20).

55.     Even if the traffic stop only lasted 5-8 minutes as testified by Defendant Freivald, the video tape of 2 minutes and 12 seconds cannot be for the duration of the stop.

57.     Officer Freivald, who knows, claims that it is not clear when he learned of the limits of his territorial authority.  He did acknowledge that when he stopped Ms. Hudson's minivan, he was acting as a private citizen and that he was concerned about acting as a private citizen "[b]ecause I was assuming liability if something went wrong" Therefore the city would not provide him with a lawyer. (Exhibit 4, Freivald dep. at 28-29).

60.     Lt. Thacker testified that he was told by Defendant that he pulled over Ms. Hudson's vehicle because it was "riding in the left hand lane." (Exhibit 1, Thacker dep. at 8, 19-20, 24).  He further testified that he would not pull someone over outside his jurisdiction for that reason. (*Id*. at 24).

### ARGUMENT

I.      **THE LIMITS OF DEFENDANT'S AUTHORITY WERE CLEARLY ESTABLISHED IN HUDSON v. COMMONWEALTH;  HAVING EXCEEDED THAT AUTHORITY, HE IS NOT ENTITLED TO INVOKE QUALIFIED IMMUNITY.**

Defendant maintains that the proper test for deciding these cross motions for summary judgment is that of *United States v. Atwell*, 470 F.Supp.2d 554 (D.Md. 2007), which identified a number of factors to consider when deciding the legality of an extra-territorial seizure by a police officer. (Deft's Memo at 19-21). While Plaintiff maintains that she should prevail under that test (*see* Plaintiff's Brief in Support of Motion for Summary Judgment, ECF#30 at 5-6), there is a more fundamental error in Defendant's approach to qualified immunity.

Qualified immunity requires that the law be clearly established in order to defeat the immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The law is clearly established such that an [official's] conduct transgresses a bright line when the law has been authoritatively

decided by the Supreme Court, the appropriate United States Court of Appeals or the highest court of the state. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).  In this case, the critical decision  came from the Supreme Court of Virginia in *Hudson v. Commonwealth,* 266 Va. 371 (Va. 2003).  That definitive decision is the highest law of Virginia and conclusively establishes two critical issues in this case: police authority outside their jurisdiction and the authority of private citizens to enforce the law.  Just as Defendant mistakenly suggests that state law can determine immunities for state officials in federal civil rights actions (Def. Memo at 23-24 ), he mistakenly suggests that the authority of state officials is defined by federal and not state law.  It is federal law that governs the question of qualified immunity and state law that defines the authority of a police officer (and that of private citizens) within its borders. *See In re Allen*, 106 F.3d 582, 595 (4th Cir. 1997). Thus, the starting point for discussion and one that is grounded in clearly established law, is the *authority* of Defendant Frievald to engage in the conduct which is the gravamen of this action.

Defendant was operating with only the authority of a private citizen.  Again, if there was any question about that, *Hudson* resolved it.[2] [3]  As a private citizen, Defendant Freivald can only

---

[2]Defendant attempts to avoid "clearly established law" by claiming that there is no proof that Defendant actually knew, before the incident, that when acting outside his jurisdiction he was acting as a private citizen. (Deft's Memo at 29). Although there is ample testimony from Defendant that he was aware of the geographical limits of his authority (Freivald dep. at 28-29), the issue is not what Defendant Freivald knew but objectively what a reasonable officer in his position knew or should have known.

[3]Defendant maintains that he was acting pursuant to the authority of Va. Code § 15.2-1742, which, he claims, authorized him to take action as a police officer anywhere in the state if there is a "threat to public safety". (Defendant's Memo at 24).  Of course, if Defendant is right, the Supreme Court of Virginia was wrong in *Hudson*.

act in response to a felony or breach of the peace.  Only if he can bring Ms. Hudson's conduct within the bounds of a breach of the peace did he have any authority at the time of the incident. Virginia courts have defined "breach of the peace" as "an act of violence or an act likely to produce violence." *Taylor v. Commonwealth*, 11 Va. App. 649, 653, 400 S.E.2d 794 (Va. Ct. App. 1991).  As there was no violence, Defendant has to show that violence was imminent. *See Stewart v. Commonwealth,* No. 0248-96-3 (Va. Ct. App. March 4, 1997)("the test is an objective one – would the [plaintiff's] conduct provoke *a reasonable person* to violence.")(emphasis in original).  Instead, he claims the cloak of "public safety" but provides no analysis of how the broad concept of public safety is the equivalent of imminent violence, because he can't. Indeed, when Defendant spoke to Lt. Thacker, he did not even mention a public safety concern (which, of course, would be of concern to an officer within the jurisdiction of Nelson County), but rather told him that he stopped Ms. Doe because she was going too slowly in the left lane. (Thacker dep. at 8, 19-20, 24).

The Fourth Circuit has held that "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under Section(s) 1983." *In re Allen v. McGraw*, 106 F.3d 582, 593 (4th Cir. 1997).[4]  *See also Holloman ex Rel Holloman v. Harland*, 370 F.3d 1252, 1267 *(*11th Cir. 2004)("Employment by a local government . . . is not a carte blanche invitation to push the envelope and tackle matters far beyond one' job decription or achieve one's official goals through unauthorized means. Pursuing

---

[4]Defendant does claim that some the cases cited by Plaintiff regarding extra-territorial arrests resulted in qualified immunity for the officials. (Deft's Memo at 17, n.6).  In each of those cases, qualified immunity was granted because the law limiting the authority of officers was not well established.  In light of *Hudson,* it is not possible to make that claim in this case.

a job-related goal though means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity."); *Mackey v. Dyke*, 29 F.3d 1086, 1095 (6th Cir. 1994) (finding that "defendants bear the initial burden. . . [of] show[ing] they were acting within their discretionary authority at the time in question"); *Cronen v. Texas Dept. of Human Services*, 977 F.2d 934, 939 (5th Cir. 1992)(to assert qualified immunity, an official "must show that the conduct in question occurred while he was acting 'in his official capacity and within the scope of his discretionary authority.'"); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988) (holding that for immunity an official "must first prove that `he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."'); *Gray v. Bell*, 712 F.2d 490, 502 n. 36 (D.C. Cir. 1983) ("It is clear that the scope of authority requirement is a prerequisite to any application of official immunity whatever the level of protection asserted or the nature of the claim involved."); *Barker v. Norman*, 651 F.2d 1107, 1124-25 (5th Cir. 1981) (to claim qualified immunity, a defendant official must show that "the complained-of actions were undertaken pursuant to the performance of his duties and within the scope of his discretionary authority").  In this case, the scope of Defendant's geographical authority as a police officer was defined in *Hudson*.  The question to be asked is "whether a reaonable official . . . should have known that the conduct was clearly established to be beyond the scope of her authority" *Leverette v. Bell*, 247 F.3d 160, 165 (4th Cir. 2001)("Before evaluating the merits of Bell's qualified immunity defense, we must establish her official status, i.e., whether she conducted the challenged search while acting within the scope of her authority.").  The Fourth Circuit has therefore established binding precedent, ruling that the question of the scope of authority, defined by state law, must precede a qualified immunity analysis and if it is established

6

that the conduct of the state official exceeds that authority, no qualified immunity can be found.

Defendant Freivald knew or should have known the limits of his authority when he engaged in

police-type action outside his jurisdiction and knew that he was acting as a private citizen and

was personally responsible if anything went wrong.  He is not entitled to assert qualified

immunity.

**II.      ACTING AS A PRIVATE CITIZEN, DEFENDANT IS NOT ENTITLED
          TO CLAIM QUALIFIED IMMUNITY.**

Courts have generally found that a private citizen who, acting under color of law, violates

the rights of another, is not entitled to claim qualified immunity.[5] *See e.g. Toussie v. Powell*, 323

F.3d 178, 182 (2d Cir. 2003); *Felix de Santana v. Velez,* 956 F.2d 16 (1st Cir. 1992); *Duncan v.*

*Peck*, 844 F.2d 1261 (6th Cir. 1988).  In *Wyatt v. Cole*, 504 U.S. 158, 167, 168 (1992), the Court

held that "the rationales mandating qualified immunity for public officials are not applicable to

private parties."  "[E]xtending . . . qualified immunity to private parties would have no bearing

on whether public officials are able to act forcefully and decisively in their jobs or on whether

qualified applicants enter public service" *Id.* at 168.[6]  In this case, Defendant Freivald was acting

as a private citizen and he knew so.  He knew that, as a private citizen, the city would not provide

him with an attorney and that if anything went wrong, he would be personally liable. The city

recognizes that Defendant was not acting as a police officer and therefore there is no reason to

---

[5]The Defendant confuses acting under color of law with the status of a public official.
(Deft's Memo at 24).  Public officials are not automatically acting under color of law nor are
private citizens automatically excluded becuase they are not officials. *See* Plaintiff's Brief in
Support of Motion for Summary Judgment [ECF #30] at 7-8. The term "color of office" refers to
another category of cases. *See Hudson, supra*. at 377.

[6]The Court did suggest that some form of "good faith" defense may be available but did
not reach the issue. *Richardson, supra*. at 413-14.

7

afford him the kind of immunity that is available to police officers performing legitimate discretionary functions. Other officers will not be deterred from acting forcefully within their jurisdiction and prospective applicants will not shy away from a job simply because one officer while off-duty, out of the jurisdiction and without authority has been held responsible for his intentional actions.

**III.    OFFICER FREIVALD WAS ACTING "UNDER COLOR OF LAW."**

See Brief in Support of Plaintiff's Motion for Summary Judgment at 7-8.

<b>CONCLUSION</b>

For the foregoing reasons as well as those advanced in Plaintiff's initial Brief, Defendant cannot invoke qualified immunity and Plaintiff's Motion for Summary Judgment should be granted.

Respectfully submitted,
JANE DOE
By Counsel

s/ Jeffrey E. Fogel
Jeffrey E. Fogel
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300
(434) 220-4852
jeff.fogel@gmail.com                                      March 30, 2020

<b>CERTIFICATION OF SERVICE</b>

I certify that the foregoing Reply Brief in Support of Plaintiff's Motion for Summary Judgment was filed with the court's ECF system on March 30, 2020 which will give notice of the filing to all attorneys of record.

s/Jeffrey E. Fogel
Jeffrey E. Fogel