**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| T.J., O.J., D.J., and J.J., infants by their next friend, Tasha Hudson )<br><br>)<br><br>v.                                               )<br><br>)<br><br>JON FREIVALD and JOHN DOE,           )<br>                        **Defendants.**        )<br><br>) | **Docket No. 3:18-cv-00096** |

---

**DEFENDANT FREIVALD'S REPLY TO PLAINTIFFS' REPLY BRIEF IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR  SUMMARY JUDGMENT**

**RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS**

6.  Plaintiffs have admitted that Ms. Hudson saw Officer Freivald flashing his headlights while behind Ms. Hudson's vehicle and that Ms. Hudson did not move to the right to allow him to pass. (Def. 1st RFA #1)[1].  This admission establishes that Ms. Hudson committed a traffic violation before Officer Freivald initiated a traffic stop of her vehicle. (See, Va. Code Ann. §§ 46.2-804 & 46.2-841.2).

7.  There is a genuine factual dispute as to Ms. Hudson's manner of driving and the "totality of the circumstances" leading up to the traffic stop of her vehicle on

---

[1] RFAs refer to the Requests for Admissions.  Although in depositions Ms. Hudson denied seeing the flashing headlights of Officer Freivald's patrol car or the flashing headlights of any other cars behind her, in Plaintiffs' response to the Defendant's First Request for Admissions, Plaintiffs unequivocally indicated that: "Officer Freivald did not activate his lights, he *flashed his headlights"* when he was behind Ms. Hudson's vehicle. (Def. 1st RFA #1) (emphasis added). Pursuant to Fed. R. Civ. P. 36(b), Plaintiffs' admissions are conclusively established facts in this case.  Ms. Hudson also admitted that she traveled exclusively in the left lane while traveling on Rt. 29 back to Charlottesville and that she did not pass or overtake another vehicle in the right-hand lane for several miles, in violation of Va. Code Ann. §46.2-804.  (TH T13:1-4); (Def. 2nd RFA #13).

October 7, 2016.  Officer Freivald testified that his attention was drawn to Ms. Hudson's vehicle in the left lane as he approached: "My initial observation was a cluster of four vehicles, one of which was flashing its high beams fairly regularly. It was …the second vehicle in the left lane.  The first vehicle in the left lane being Ms. Hudson's vehicle.  There was a vehicle to the right of her, a little bit forward of her, that was traveling at an identical speed to Ms. Hudson." (JF T11:6-12)[2]. "Which as I approached and paced the situation, my calibrated speedometer showed me it was 54 miles an hour." (JF T11:14-16).  "As I stated, the one vehicle had been flashing its lights.  The other vehicle, which was a second vehicle in the right lane, was – it appeared to me to be trying to get around her but there was not enough room between her and the first vehicle in the right lane for him to make the gap. So as he was approaching, he was cutting in close, cutting in close, but not getting around."  "…He was in the right lane.  He was trying – what he was trying to do was get up so he could come around he front of Ms. Hudson. But the vehicle in front – the vehicle in front of him didn't give him enough room to clear Ms. Hudson's vehicle.  So he was coming up, he was getting close and kind of nudging left a little but close to Ms. Hudson's vehicle.  He did that a couple of times." (JF T12:3-24).  "…And for the course of a half to three quarters of a mile we continued in this deadlock, at which point I came up into – I became the third vehicle in the right lane." (JF T13:12-15).  In Officer Freivald's judgment the manner of Ms. Hudson's operation of her vehicle and the ongoing reactions of other motorists to her manner of operation was a budding road rage incident.

---

[2] Transcripts refer to the depositions taken in this matter (JF refers to Jon Freivald and TH refers to Tasha Hudson).

One of the other vehicles was flashing its lights and another other vehicle was trying to get around and in front of Ms. Hudson and getting too close to her vehicle in its attempts to cut into her lane in front of her.  Officer Freivald observed what was in effect a rolling roadblock created by Ms. Hudson's failure to heed the flashing lights of two different vehicles, including his own, and failing to move to the right.  This created a significant safety hazard and threat to the public– and the situation escalated over the course of about a mile. (JF T14:1-10).  Contrary to assertions made by Plaintiffs, Officer Freivald testified at his deposition that he was acting in an effort to address "what, in [his] judgment, was a matter of public safety." (JF T30:13-14).  Officer Freivald does not dispute that he issued no citation or summons as a result of his encounter with Ms. Hudson and the officer arrested no one during the traffic stop. (Def. 1st RFA #4); (MKJ T16:1-6).

8. Officer Freivald did not dispute that he *was told* by Capain Mitchell that if he engaged in police activity outside of his jurisdiction he could be considered a private citizen. (JF T28:6-12) (emphasis added).  However, Plaintiffs never established, and the record therefore does not indicate, whether this conversation took place before or after the traffic stop, whether it was in the context of the internal disciplinary proceedings against Officer Freivald subsequent to the traffic stop. Plaintiffs never established, and the record therefore does not indicate whether or not Officer Freivald was aware *at the time of the traffic stop* that he would be considered a private citizen in making that stop.

There were many questions at the deposition about Officer Freivald's disciplinary proceedings regarding this traffic stop and conversations between

Officer Freivald and his supervisions after the initiation of the disciplinary actions. (JF T31:18 – 37:24)  However, the record does not establish that Officer Freivald was testifying about what his supervisors told him after the police department investigated Ms. Hudson's grievance and issued its administrative discipline or if Officer Freivald was describing what he actually knew at the time of the traffic stop of Ms. Hudson's vehicle.

Officer Freivald testified that he was aware of the concept of a citizen's arrest, but again, the  was record does not establish whether Officer Freivald was aware of that concept at the time of the traffic stop with Ms. Hudson in October 2016. (JF T29:23-25).

Officer Freivald repeatedly testified that he was able to engage in police activity outside the jurisdiction in which he was so employed in situations involving a threat to public safety. He was not asked to cite any specific statutory, and he did not cite any, including Va. Code Ann. § 15.2-1724. (JF T28:22-24; T35: 7-10; T38:20-25).

## I.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See, *Celetex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "The burden then shifts to the nonmoving

party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, at 247-248 (emphasis in original).

## II.  ARGUMENT[3]

**There are material facts at issue as to whether there existed reasonable grounds for Officer Freivald to suspect that there was an immediate threat to life or public safety sufficient to enable him to act extra-territorially pursuant to Va. Code §15.2-1724, to justify a private citizen's arrest for a breach of the peace, or both.**

Under Virginia's traffic code, a person is guilty of the misdemeanor crime (not just a minor traffic infraction) of "Aggressive Driving" if "(i) the person violates one or more of the following: § 46.2-802 (Drive on right side of highways), *§ 46.2-804 (Failure to observe lanes marked for traffic)*, § 46.2-816 (Following too closely), § 46.2-821 (Vehicles before entering certain highways shall stop or yield right-of-way), § 46.2-833.1 (Evasion of traffic control devices), § 46.2-838 (Passing when overtaking a vehicle), § 46.2-841 (When overtaking vehicle may pass on right), § 46.2-842 (Driver to give way to overtaking vehicle), *§ 46.2-842.1 (Driver to give way to certain overtaking vehicles on divided highway)*, § 46.2-843 (Limitations on overtaking and passing), any provision of Article 8 (§ 46.2-870 et seq.) of Chapter 8 of Title 46.2 (Speed), or § 46.2-888 (Stopping on

---

[3] Defendant incorporates here without here re-stating his prior pleading in opposition to Plaintiffs' motion for summary judgment.

highways); and (ii) that person is a hazard to another person or commits an offense in clause (i) with the intent to harass, intimidate, injure or obstruct another person. Va. Code Ann. § 46.2-868.1 (emphasis added).

Officer Freivald personally observed Ms. Hudson in violation of at least two of the highlighted subsections noted above under Virginia's traffic code for "Aggressive Driving:" namely, violations of Va. Code Ann. §§ 46.2-804 & 842.1. Notably, Ms. Hudson even admits to violating these subsections as well. (Def. 1st RFA #1); (Def. 2nd RFA #13). Officer Freivald further personally observed an escalating road rage incident over the course of three quarters of a mile while traveling behind Ms. Hudson's vehicle. (JF T13:12 – 14:18). While approaching the cluster of the four vehicles including Ms. Hudson's vehicle, Officer Freivald noted that Ms. Hudson's vehicle remained in the left lane thereby creating a rolling roadblock with another vehicle she did not overtake in the right hand lane and the vehicle behind her was flashing its headlights at her vehicle and she did not move to the right or even attempt to move over to the right to allow that vehice to pass in violation of Va. Code Ann. § 46.2-842.1. (JF T12:3-4). Officer Freivald also observed another vehicle in the right lane attempting to pull in front of Ms. Hudson's vehicle in the small gap between the front of Ms. Hudson's vehicle and the back end of the other vehicle immediately in front of it in the right lane. (JF T12:4-10). Ms. Hudson's vehicle blocked that vehicle's entry into the left lane multiple times over the course of approximately three quarters of a mile and the two vehicles got a little too close to one another from Officer Freivald's vantage point. (JF T12:4-10). Given the rates of speed in excess of 50 miles per hour in this cluster of vehicles, the nudging of the vehicles multiple times, the blocking of entry of another vehicle on multiple occasions by Ms. Hudson, and Ms. Hudson's

6

complete disregard of the flashing of headlights from a civilian car as well as the police vehicle, Officer Freivald was concerned that this rolling deadlock was escalating into a road rage incident with a serious threat to life and public safety of all the drivers and passengers involved (the failure of Ms. Hudson to allow one vehicle's multiple efforts to enter her lane as well as her failre to give way to the repeated flashing of headlights established reasonable grounds to suspect Ms. Hudson of Aggressive Driving, in violation of Va. Code Ann. § 46.2-868.1.

Although there is no case law definitively concluding that "Aggressive Driving," in violation of Va. Code Ann. § 46.2-868.1, constitutes a breach of the peace under the common law, other jurisdictions have held, and legal treatises recognize, that other types of dangerous or reckless driving, including DUI, amounts to a breach of the peace allowing a private citizen to stop, detain, or arrest the driver. *See, e.g.,* 11 C.J.S. *Breach of the Peace* § 5 (1995) ("[T]he operation of a motor vehicle while intoxicated is an activity which threatens the public security and involves violence, and as such, it amounts to a breach of the peace."); 12 Am.Jur.2d *Breach of Peace and Disorderly Conduct* § 9 (1997) (driving while intoxicated and reckless driving included among the varied acts and conduct held or recognized to constitute a breach of the peace); 5 Am.Jur.2d *Arrest* § 67 (1995) (officer may arrest for DUI "even where the power to arrest without warrant is limited to breaches of the peace, since this offense is held to constitute a breach of the peace, or at least a prospective or anticipated breach."). Supporting the treatises' statements are cases from a number of different jurisdictions. *E.g., Edwards v. State,* 462 So.2d 581, 582 (Fla.Dist.Ct.App.1985); *People v. Niedzwiedz,* 268 Ill.App.3d 119, 205 Ill.Dec. 837, 644 N.E.2d 53, 55 (1994);

*Commonwealth v. Gorman,* 288 Mass. 294, 192 N.E. 618, 620 (1934); *City of Troy v. Cummins,* 107 Ohio App. 318, 159 N.E.2d 239, 242 (1958); *Romo v. State,* 577 S.W.2d 251, 253 (Tex.Crim.App.1979); *West Virginia v. Gustke,* 205 W.Va. 72, 516 S.E.2d 283, 291-92 (1999); *City of Waukesha v. Gorz,* 166 Wis.2d 243, 479 N.W.2d 221, 223 (Ct.App.1981); *accord Ruiz v. State,* 907 S.W.2d 600, 604 (Tex.Ct.App.1995); *Pringle v. State,* 732 S.W.2d 363, 368 (Tex.Ct.App.1987); *Yates v. State,* 679 S.W.2d 534, 537 (Tex.Ct.App.1984).

Most notably, in *Hudson v. Commonwealth*, 266 Va. 371, 585 S.E.2d 583 (2003), the Virginia Supreme Court held that dangerous driving on a public highway so as to imperil others (not only the off-duty officer in an unmarked car) clearly constituted a breach of peace sufficient to justify a citizen's arrest by the off-duty officer regardless whether the driver was under the influence of intoxicants.  See also, *Arizona v. Chavez,* 208 Ariz. 606, 96 P.3d 1093 (Ariz. App. 2004).   Moreover, in *United States v. Sealed Juvenile 1* , 255 F.3d 213 (5th Cir. 2001), the Fifth Circuit held that "any traffic violation that is egregious enough to threaten …disorder or pose a potentially perilous public risk …may constitute a breach of the peace" *Id.* at 218, and that the determination whether a given act constitutes a breach of the peace requires a case-by-case analysis of the facts and surrounding circumstances. *Id.*

Contrary to Plaintiffs' assertion, the traffic stop in this case did not involve just a minor traffic infraction  -- there were sufficient evidence to support the criminal offense of Aggressive Driving, in violation of Va. Code Ann. § 46.2-868.1.  Plaintiffs' emphasis that an imminent showing of violence is required to justify a private citizen's arrest for a breach of the peace is also misplaced.  Of course, no one can say for sure whether

8

violence would have actually ensued if Officer Freivald had refrained from stopping Ms. Hudson's vehicle.  However, the standard does not require an officer, or any reasonable person, to wait for the carnage of a multi-vehicle crash in a situation such as this before acting to diffuse the situation. To require a higher standard is to demand the impossible, since no person can ever be *absolutely certain* that violence will occur – whether the case involves a private citizen's arrest for a breach of the peace or that of police officer acting due to an immediate threat to life or public safety (pursuant to Va. Code Ann. § 15.2-1724).

The cluster of four vehicles impeded largely by Ms. Hudson in the left lane coupled with her failure to heed the flashing lights of other vehicles, her blocking the entry of another vehicle attempting to get around her on multiple occasions and her own failure to move to the right created a potentially perilous public risk.  As noted above, there are genuine issues of material facts concerning all the surrounding circumstances of this traffic stop and this Court must conduct a full analysis of all the surrounding circumstances of the stop. Accordingly, Plaintiffs' motion for summary judgment must be denied.

**CONCLUSION**

For all the foregoing reasons, and for any additional reasons that may be argued at a hearing on this motion, Defendant Freivald, by counsel, respectfully requests that this Court deny Plaintiffs' motion for summary judgment.

Respectfully Submitted,

JON FREIVALD
By Counsel

9

/s/

Bonnie J. Lepold, (VSB #44926)
Lepold & Freed, PLLC
414 East Market Street, Suite A
Charlottesville, Virginia 22902
(434) 282-2380 (telephone)
(434) 282-2382 (facsimile)
blepold@lepoldfreed.com
Counsel for Jon Freivald

## MAILING CERTIFICATE

I HEREBY CERTIFY that on the 3rd day of April 2020, I electronically sent the foregoing Defendant's Reply Memorandum to Plaintiff's Reply Brief in Further Support of Plaintiff's Motion for Summary Judgment to Jeff Fogel, Esq., 913 E. Jefferson Street, Charlottesville, VA 22902 (email: jeff.fogel@gmail.com).

/s/

Bonnie J. Lepold, (VSB #44926)
Counsel for Jon Freivald